UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| MELISSA FAIRFIELD,<br><br>    Plaintiff,<br><br>v.<br><br>A. KHOO, I. SINGH, S. SINGH,<br><br>    Defendant. | Case No. 1:19-cv-00632-DAD-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 52) |
|---|---|

    This matter was reassigned to the undersigned on November 17, 2020.[1] (Doc. No. 51). Pending before the Court is Defendants' Motion for Summary Judgment with supporting exhibits. (Doc. Nos. 52, 52-4). Defendants seek dismissal of all claims against Defendants Chief Physician and Surgeon Dr. I. Singh and Dentist S. Singh, and all claims arising after May 9, 2017 as to Defendant Dr. A. Khoo, due to Plaintiff's failure to fully exhaust his available administrative remedies as to these claims and Defendants. (*Id*. at 2). Plaintiff filed a Response to Defendants' Motion, which the court accepted as timely filed. (Doc. Nos. 56, 67). Plaintiff submitted exhibits in support of his Response. (Doc. Nos. 57, 58, 59). Defendants filed a Reply. (Doc. No. 61). The undersigned recommends that the District Court grant in part and deny in part Defendants' Motion for Summary Judgment.

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2019).

# I. BACKGROUND

Plaintiff Melissa Fairfield[2] ("Plaintiff" or "Fairfield"), a state prisoner, initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 against nine defendants on May 9, 2019. (Doc. No. 1). Fairfield is proceeding on his First Amended Complaint (Doc. No. 13, "FAC"), which the then-assigned magistrate judge screened and found stated cognizable Eighth Amendment medical deliberate indifference claims against Defendants A. Khoo, I. Singh, and S. Singh, but no other claims against the other defendants. (Doc. No. 14).

The FAC contains allegations spanning two years, beginning in May 2017. Specifically, Fairfield alleges on or about March 13, 2017, Dr. Showalter, who is not named as a defendant, diagnosed a "mass" in Plaintiff's face/neck area as a "slow-growing cyst" or lipoma. (Doc. No. 13 at 3, 5). Showalter prescribed antibiotics and told Fairfield if the mass does not get "better" he should inform his "PCP" to obtain a "possible" referral to an "ENT" and a "CT biopsy." (*Id.* at 3).

**A. Allegations in FAC as to Dr. Khoo**

On May 9, 2017, Dr. Khoo examined Fairfield. (*Id.* at 2, 5). Dr. Khoo reviewed Dr. Showalter's notes and despite Fairfield's complaints of increased pain "downgraded [any] need for medical intervention" diagnosing the mass "as a slow-growing cyst." (*Id* at 5). Fairfield alleges Dr. Khoo failed to address "additional impairments" of the mass "as serious" and only scheduled him for a 90-day follow-up appointment. (*Id.*). When Fairfield saw another doctor on June 13, 2017, there were no medical notes in his chart regarding the mass from Dr. Khoo. (*Id.*). Fairfield claims that Dr. Khoo unnecessarily caused him to be in prolonged pain and caused him substantial harm when he dismissed the seriousness of his complaints about the mass and delayed sending him for a CT biopsy to determine whether the mass was cancer. (*Id.*). Specifically, Fairfield claims that Dr. Khoo "delay[ed] the immediate care of an aggressive lymphoma and not referring Plaintiff to an oncologist for treatment," which caused him unnecessary pain and suffering. (*Id.* at 10).

---

[2] Fairfield is a transgender male who prefers the use of the male pronouns. (Doc. No. 13 at 32).

The FAC contains various other complaints against Dr. Khoo that arose post-May 9, 2017 and continued through February 15, 2019.[3] The following summarizes Plaintiff's post-May 9, 2017 complaints against Dr. Khoo that are unrelated to Fairfield's claim concerning his neck mass.

- Fairfield complained about hearing loss to Dr. Khoo but Dr. Khoo failed to address the problem or refer him to an audiologist for further examination. (*Id.* at 8). Specially, on August 28, 2017, Dr. Khoo evaluated Fairfield for his hearing loss by "rubbing his fingers together to determine hearing loss was minimal." (*Id.*). Fairfield describes Dr. Khoo's method of diagnosing whether someone is hearing impaired by rubbing his fingers as "ludacris." (*Id.*). Fairfield alleges that he asked to be seen by an audiologist for testing. (*Id.*)
- At some unspecified time, Dr. Khoo chose not to renew Fairfield's prescription for pain medication until he protested. (*Id.*).
- Fairfield suffered various side effects from treatment for the mass "the next two years" including, but not limited to nausea, headaches, sore throat, inability to swallow, thrush of the mouth, no saliva glands, dry cough, heartburn, chest pain, diarrhea, labored breathing, crippling joint pain, lower back pain, muscle spasms, scalp pain, sensitive skin, tongue ulcers, ear pain, etc., all of which Dr. Khoo "did not want to treat." (*Id.*).
- On January 16, 2018, Dr. Khoo examined Fairfield in connection with his hearing loss. (*Id.* at 11). Dr. Khoo did not know what to do so Dr. Khoo requested Fairfield to follow up in 30 days. Fairfield states he has "hearing loss that will never return, due to the delay of care." (*Id.*).
- On February 28, 2018, Dr. Khoo was "not happy with Plaintiff after refusing flu/pneumonia vaccinations." (*Id.*).

---

[3] Because the only claim Plaintiff exhausted to the third level of review involved Dr. Khoo's alleged deliberate indifference in relation to his treatments of Plaintiff's neck mass, the undersigned will recommend dismissal of these various unrelated claims concerning Dr. Khoo.

3

- Dr. Khoo threatened to move Fairfield to an "ADA room" where other hearing-impaired inmates live. (*Id.*). Fairfield claims Dr. Khoo's threat was "retaliatory and discriminatory by segregating hearing-impaired inmates away from their peers involuntarily." (*Id.* at 11-12).
- In February 28, 2018, Dr. Khoo failed to update Fairfield's medical chrono to reflect that he had restrictions. (*Id.* at 12).
- On March 7, 2018, Dr. Khoo "lied" by placing a notation in Fairfield's medical chart that Fairfield is part of the CCCMS mental health program. (*Id.*). When Fairfield asked Dr. Khoo to fix the error, Dr. Khoo refused, stating that "he has to put that because only crazy people refuse medication." (*Id.*).
- After March 29, 2018, Fairfield refused to be evaluated by Dr. Khoo because "he did not feel safe around him." (*Id.*).
- On April 3, 2018, Fairfield went to get his weekly injection of hormone therapy and was told that Dr. Khoo did not re-order the prescription, causing him to miss a dose. (*Id.*).
- On April 30, 2018, Fairfield claims he submitted a grievance for Dr. Khoo's unprofessionalism and retaliation. (*Id.*).
- On July 10, 2018, Dr. Khoo did not order prednisone. (*Id.*).
- On February 15, 2019, Fairfield states he had no choice but to be evaluated by Dr. Khoo, because his "body swelled, and the water pill was not working." (*Id.* at 15.). Dr. Khoo did not write a new order for a water pill, which Fairfield claims put him further at risk. (*Id.*).

**B. Allegations in FAC as to Dr. Singh**

Chief Physician and Surgeon Dr. Singh was Dr. Khoo's supervisor who approved or disapproved referrals submitted by Dr. Khoo. (*Id*. at 18). On May 30, 2017, Dr. Singh denied a referral to surgically remove the lipoma and did not order any additional tests to rule out malignancy of the mass. (*Id*.). Fairfield also claims Dr. Singh "failed to inquire into essential facts needed to address the plaintiff complaints and ease the pain the plaintiff suffered." (Doc.

4

No. 13 at 18). Additionally, Fairfield claims that Dr. Singh wrongfully allowed him to pass through an imaging scanner ignoring the "manufacturer's warnings about being exposed to a high level of radiation" causing him to be exposed unnecessarily to radiation due to the port catheter in his chest. (*Id.*).

### C. Allegations in FAC as to Dentist Singh

Fairfield alleges Dentist Singh suggested on September 6, 2017 that he should "notify dental before treatment for cancer so dental could remove all his teeth before treatment so they would not get infected during radiation therapy." (*Id.* at 20.). Fairfield submits this suggestion is "barbaric, inhumane and not practiced with other cancer patients not imprisoned." (*Id.*). On May 3, 2018, Dentist Singh wanted to "grind down Plaintiff's teeth to prevent tongue ulcers from touching teeth." (*Id.*). Fairfield again claims the recommended treatment is "barbaric and inhumane." (*Id.*).

At some unspecified point, Fairfield alleges that Dentist Singh ignored his complaint about mint burning his mouth but prescribed him mint products anyway. (*Id.* at 20). On August 1, 2018, an oncologist Dr. Malik recommended baking soda to brush his teeth, but Dentist Singh "intentionally interfered and ignored the specialist['s] recommendation." (*Id.*). Fairfield states he "filed a[n] A.D.A. grievance [about] not being allowed or issued a neutral flavor toothpaste to brush teeth." (*Id.*). Nonetheless, Dentist Singh would not order a substitution. (*Id.*).

On September 2, 2020, Defendants filed an answer to the FAC. (Doc. No. 36). Consistent with the Court's Scheduling Order, Defendants filed this exhaustion-based motion for summary judgment on the grounds that Fairfield failed to exhaust his administrative remedies for any claims as to Dr. Singh and Dentist Singh, and any post-May 2017 claims against Dr. Khoo prior to bringing this suit against Defendants, as required by the Prison Litigation Reform Act. (Doc. No. 52, "MSJ").

### II. APPLICABLE LAW

**1. Summary Judgment Standard**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith*

5

1  *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate
2  when there is "no genuine dispute as to any material fact and the movant is entitled to judgment
3  as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate
4  time for discovery and upon motion, against a party who fails to make a showing sufficient to
5  establish the existence of an element essential to that party's case, and on which that party will
6  bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The
7  moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of
8  material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence
9  for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might
10 affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477
11 U.S. 242, 248 (1986).

12    If the moving party meets its initial burden, the burden then shifts to the opposing party to
13 present specific facts that show there to be a genuine issue of a material fact.  *See* Fed R. Civ. P.
14 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that
15 there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 587.  The
16 party is required to tender evidence of specific facts in the form of affidavits, and/or admissible
17 discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P. 56(c);
18 *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a material issue
19 of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to
20 require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W.*
21 *Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).
22 However, "failure of proof concerning an essential element of the nonmoving party's case
23 necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

24    The court must apply standards consistent with Rule 56 to determine whether the moving
25 party demonstrated there is no genuine issue of material fact and showed judgment to be
26 appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).
27 "[A] court ruling on a motion for summary judgment may not engage in credibility
28 determinations or the weighing of evidence."  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.

2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  The mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

In an exhaustion-based summary judgment motion, the defendant bears the initial burden of establishing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of persuasion remains, however, with defendant.  *Id.*

### 2. PLRA Exhaustion Requirement

Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is condition precedent to filing a civil rights claim.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); s*ee also McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not.  The actual statute makes exhaustion a precondition to suit."  (citation omitted)).  The exhaustion requirement "applies to all inmate suits about prison life."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, the nature of the relief sought by the prisoner or the relief offered by the prison's administrative process is of no consequence.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  And, because the PLRA's text and intent requires "proper" exhaustion, a prisoner does not satisfy the PLRA's administrative grievance process if he files an untimely or procedurally defective grievance or appeal.  *Woodford*, 548 U.S. at 93.  A prisoner need not plead or prove exhaustion.  Instead it is an affirmative defense that must be proved by defendant.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  A prison's internal grievance

process, not the PLRA, determines whether the grievance satisfies the PLRA exhaustion requirement. *Id.* at 218.

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 1856. A defendant has the burden of showing that "*some* relief remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 936-937 (9th Cir. 2005). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting *Brown*, 422 F.3d at 937). "[A]dministrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," or where an "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). And relief does not remain available if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860. Where the court concludes that plaintiff has failed to exhaust available remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(a). *See Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### 3. CDCR Grievance Procedures

The California Department of Corrections and Rehabilitation's ("CDCR") administrative remedy process governs this action.[4] *See* Cal. Code Regs. tit. 15, § 3084.1 (2016). To exhaust available remedies, an inmate must proceed through three formal levels of review unless otherwise excused under the regulations. *Id.* § 3084.5. A prisoner initiates the exhaustion process by submitting a CDCR Form 602 "Inmate/Parolee Appeal" ("grievance"). *Id.* §§ 3084.2(a), 3084.8(b) (quotation marks omitted). The grievance must "describe the specific

---

[4] The court cites to the regulations in force at the time relevant to this action. These regulations were recently amended. *See* Cal. Code Regs. tit. 15, § 3480-3487 (2021).

issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall describe their involvement in the issue." *Id.* § 3084.2(a). The inmate "shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." *Id.* § 3084.2(a)(4).

An inmate must submit an appeal within thirty calendar days of "[t]he occurrence of the event or decision being appealed" or "[u]pon first having knowledge of the action or decision being appealed." *Id*. § 3084.6(c)(4). Under certain circumstances, an appeal will be accepted after the deadline. A late appeal may only be canceled where "the inmate or parolee had the opportunity to submit within the prescribed time constraints." *Id*. Further, "at the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review." *Id*. at § 3084.6(a)(3). Further, under exceptional circumstances an appeal may be accepted for review beyond the 30-day deadline, for instance, when an inmate is medically incapacitated and unable to file an appeal. *Id*. at § 3084.6(a)(4).

Where an appeal is cancelled due to a procedural error on the part of the inmate, administrative remedies remain available to the inmate—namely appealing the cancellation decision. *See Cortinas v. Portillo*, 754 F. App'x 525, 527 (9th Cir. 2018) ("Because [plaintiff] could have appealed his cancellation decision . . . the improper cancellation of his appeal did not render administrative remedies effectively unavailable to him."); *Davenport v. Gomez*, No. 2:16-CV-1739, 2019 WL 636844, at *15 (E.D. Cal. Feb. 14, 2019) (noting that the appeals process is available where the plaintiff can raise the cancellation appeal to the next level).

### III.  ANALYSIS

**A. Evidence Submitted by the Parties**

Defendants attach the Declaration of S. Gates, Chief of Health Care Correspondence and Appeal Branch (HCCAB) in support of their MSJ. (Doc. No. 52-4). HCCAB is the part of the California Correctional Health Care Services ("CCHCS") that provides "oversight of medical, dental, and mental health care appeals/grievances for adult inmates" in CDCR. (*Id*. at ¶ 1). "All

levels of health care appeals/grievances, including the institutional and headquarters levels of review, are tracked through a computer database known as the Health Care Appeals and Risk Tracking System (HCARTS).  HCARTS also tracks health care appeals/grievances that were received and ultimately rejected and the reason for the rejection." (*Id*. at ¶ 4).  Gates reviewed the HCARTS database for Fairfield to identify all appeal/grievances filed by Fairfield. (*Id*. at ¶ 8).  A summary of the appeals/grievances is attached to Gate's Declaration as Exhibit A. (Doc. No. 52-4 at 6-14).  Between May 9, 2017, the earliest date of the claims made in the complaint, and May 9, 2019, the date of the filing of the instant complaint, Fairfield submitted six grievances for review at the institutional, or lowest, level: CCWF HC 19000278, received April 24, 2019; CCWF HC 18000985, received September 7, 2018; CCWF HC 18001021, received September 21, 2018; CCWF HC 18000869, received July 19, 2018; CCWF HC 18000659, received April 30, 2018; and CCWF HC 17000043, received October 2, 2017. (*Id*. at ¶ 9: Exhibit A).

During the same period, Fairfield submitted two appeals that were received at the second level of review: CCWF HC 17034534, received June 2, 2017; and CCWF HC 17034764, received August 11, 2017.  (*Id*. at ¶ 10; Exhibit A).

Of these eight grievance/appeals, Fairfield exhausted only three to headquarters, or to the highest level of review: CCWF HC 17034534, CCWF HC 18000985, and CCWF HC 19000278. (*Id*. at ¶ 11).  Copies of these exhausted grievance/appeals and the underlying documents related to the same are attached as Gates' Declaration as Exhibit B (Doc. 54-2 at 16-43); Exhibit C (Doc. No. 54-2 at 44-70); and Exhibit D (Doc. No. 52-4 at 71-83) and are discussed in more detail below.

Grievance CCWF HC 17034534 was submitted on May 31, 2017.  (Doc. No. 52-4, Exhibit B).  In this grievance, Fairfield complained about his May 9, 2017 visit with Dr. Khoo regarding a mass in his neck stating the "medical department low-played the seriousness" of his condition. (*Id*.).  Fairfield requested to be seen by a specialist to "determine surgical removal of lipoma" and also requested a "possible CT scan to see other lipomas growing under the skin." (*Id*. at 18).  Fairfield's appeal was partially granted at the institutional level and denied at the headquarters level, exhausting the claim.  (*Id*. at 22, 16-17).

Grievance CCWF HC 18000985 was submitted on September 6, 2018. (Doc. 52-4; Exhibit C). In this grievance, Fairfield complained about the Reasonable Accommodation Panel's decision to deny his request for baking soda to be used as toothpaste. (*Id*.). At the institutional level, Fairfield complained that he was provided with oral gel and non-flavored toothpaste. On November 20, 2018, in his appeal, Fairfield complained that Dentist S. Singh and other medical professionals ignored his medical complaints. (*Id*.). This appeal was denied at the headquarters level of review and was therefore exhausted. (*Id*.).

Grievance CCWF HC 19000278 was submitted on April 24, 2019. (Doc. No. 52-4; Exhibit C). In this grievance, Fairfield requested bubblegum flavored toothpaste. (Doc. No. 52-4 at 74). At the institutional level of review, Fairfield was provided with watermelon flavored toothpaste. (*Id*. at 78.) This appeal was denied at the headquarters level of review and was therefore exhausted. (*Id*. at 72).

As an initial matter, Fairfield does not state that he was prevented from exhausting his remedies or that administrative remedies were not available to him. (*See generally* Doc No. 56). Rather, Fairfield contends he exhausted his administrative remedies as to all defendants. (*Id*. at 2). In support of his contention, Fairfield states that the defendants "would [have] known about the plaintiff's condition if they cared to look in the medical notes." (*Id*. at 10). Fairfield attaches over 400 exhibits totaling over 700 pages of exhibits in support of his opposition. In addition to the grievances identified above, Fairfield submits excerpts of CCHCS's medical and dental policies, his medical and dental files that reflect his treatment from March 2017 through June 2020, evidence of his copays for various medical and dental services, various awards and work reports.

### a. May 2017 Claims Exhausted Against Dr. Khoo

Fairfield states he exhausted appeal CCWF HC 17034534 submitted May 9, 2017 as to Dr. Khoo (Doc. No. 56 at 2) and Defendants do not dispute that the issues raised in this grievance were exhausted. (Doc. No. 52-3 at 10-11). Fairfield admits that he did not file administrative grievances concerning all his complaints against Dr. Khoo and appears to concede that these claims are unexhausted. (Doc. No. 56 at 14) ("This complaint was

11

repeatedly addressed with Defendant Khoo in person and several medical requests, but because plaintiff didn't '602' the problem, the permanent loss cannot be addressed by the court"). Neither Defendants nor Fairfield have submitted any evidence that Fairfield exhausted any of his other claims not related to his neck mass regarding Dr. Khoo to the third level of review.

In grievance CCWF HC 17034534, Fairfield complained he had been examined by Dr, Showater and diagnosed with a mass on his neck, prescribed amoxicillin but the mass had grown. (Doc. No. 52-4 at 18). Fairfield then complains that during a May 11, 2017 visit with Dr. Khoo he requested to see a specialist to determine whether the mass was a lipoma requiring surgical removal and to request a CT scan to identify other possible lipomas. (*Id*.at 19). Fairfield complains that the medical staff "low-played" the seriousness of his condition, which resulted in increased pain and increased growth of the mass on his neck. (*Id*. at 21). Fairfield requested to be seen by a specialist and obtain a CT scan. (*Id*. at 18). Because Fairfield identified Dr. Khoo as part of the "medical staff," the undersigned finds the grievance sufficient to put Dr. Khoo on notice of Plaintiff's claim. On August 3, 2017, at the institutional level, Plaintiff's appeal was only partially granted—Plaintiff was seen by a specialist and a CT scan was completed. (*Id*. at 22). On December 20, 2017, at the headquarters level, Plaintiff's appeal was denied, finding that all medically necessary care was provided to Plaintiff. (*Id*. at 16-17). That decision exhausted Plaintiff's administrative remedies. (*Id*.). Accordingly, the undersigned finds that Fairfield exhausted his Eighth Amendment claim alleging deliberate indifference against Dr. Khoo concerning his neck mass and he be granted leave to proceed on this claim. Here, grievance CCWF HC 17034534 sufficiently notified prison officials of the nature of the wrong. *Griffin v. Arpaio*, 557 F. 3d 1117, 1120 (9th Cir. 2009).

Although Fairfield submits evidence that he complained about Dr. Khoo through other avenues, none of these avenues serve to administratively exhaust his claims under CDCR's exhaustion procedures. For example, Fairfield filed a Healthcare Grievance (CCWF HC 18000659) concerning his April 25, 2018 medical appointment because he did not want to see Dr. Khoo and was not permitted to explain the reason he was refusing to see Dr. Khoo. (Doc. No. 58 at 151-52). This appeal was canceled at the institutional level of review for a failure to

1  comply with the grievance procedural rules. (*Id*. at 170). Plaintiff was directed to remedy the
2  procedural defect and refile the appeal within 30 days. (*Id*.). However, the undersigned can
3  find no evidence in the record that Fairfield refiled and then exhausted that appeal. Because
4  Fairfield had the opportunity to appeal the cancellation and he did not take that step, appeal
5  CCWF HC 18000659 is not exhausted. *See Cortinas*, 754 F. App'x. at 527.

6        Fairfield also complained about Dr. Khoo in two inmate requests for interviews, saying
7  that Dr. Khoo dismissed his complaints and retaliated against him. (Doc. No. 58 at 122-23, 148).
8  However, these inmate requests for interview forms do not serve to exhaust Plaintiff's
9  administrative remedies against Dr. Khoo. Prisoners must use the proper process for submitting
10 and appealing a grievance—the CDCR Form 602. *See* Cal. Code Regs. tit. 15, §§ 3084.2(a),
11 3084.8(b). Because these inmate requests are not the "proper" procedure to exhaust Fairfield
12 cannot proceed these unexhausted claims. *See Woodford*, 548 U.S. at 93.

13       Accordingly, the undersigned recommends that Fairfield be given leave to proceed with
14 the claims against Dr. Khoo. Namely, Plaintiff may proceed with his Eight Amendment claim
15 stemming from Dr. Khoo alleged deliberate indifference regarding Plaintiff's neck mass. The
16 undersigned recommends that the other unrelated claims set forth *infra* at pp. 3-4 against Dr.
17 Khoo be dismissed as unexhausted.

18                 **b. Claim Exhausted Against Dr. I. Singh**

19       Fairfield alleges that Dr. I. Singh wrongfully denied Dr. Khoo's recommendation that
20 the lipoma be removed and failed to heed the manufacturer's warning regarding radiation
21 exposure from a port catheter inserted into Fairfield's chest. (Doc. No. 13 at 18). Defendants
22 argue that Fairfield did not exhaust any of claims against Dr. I. Singh. (Doc. No. 52-3 at 11-12).
23 Specifically, Defendants argue that because Fairfield did not name Dr. I. Singh in any of his first
24 level appeals, he has failed to meet the procedural requirements for CDCR grievances. (*Id*.); *see*
25 Cal. Code Regs. tit. 15, § 3084.1(b) ("[a]dministrative remedies shall not be considered
26 exhausted relative to any new issue, information, or person later named by the appellant that
27 was not included in the originally submitted CDCR Form 602).

28       Even though Fairfield did not name Dr. I. Singh in his first level grievance no. CCWF-

HC-17034534, "PLRA exhaustion does not require a prisoner who grieves regarding an ongoing medical deprivation to name in his grievance all of the prison officials ultimately named as defendants in relation to that wrong so long as he gives prison [officials] sufficient information to facilitate resolution of the alleged wrong." *Estrada v. Macias*, 2017 U.S. Dist. LEXIS 46942, at *1-2 (E.D. Cal. Mar. 29, 2017). "'[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.'" *Jones v. Bock*, 549 U.S. 199, 219 (2007) (quoting *Johnson* v. *Johnson*, 385 F.3d 503, 522 (CA5 2004)); *McCain v. Peters*, 678 F. App'x 534, 535 (9th Cir. 2017) ("[Inmate's] failure to include a particular legal theory or failure to identify each named defendant in his grievances is not a valid basis for concluding that he did not exhaust administrative remedies."); *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("A grievance . . . need not contain every fact necessary to prove each element of an eventual legal claim.").

In his first level grievance no. CCWF-HC-17034534, Fairfield sought to "see a specialist and have lipomas removed." (Doc. No. 52-4 at 18). Fairfield complained that the mass on his neck has "double [sic] in size" and caused him "more pain, difficulty swallowing, and . . . hearing problems." (*Id*. at 20). Fairfield stated that another mass developed causing more discomfort and that his situation was a "medical emergency." (*Id*.). These allegations were sufficient to put prison officials on notice that Fairfield had a mass on his neck, that he was in pain, and that he was seeking additional care. Next, in his second level grievance no. CCWF-HC-17034534, Fairfield named Dr. I Singh specifically, stating that on May 30, 2017, "RN Villegas notifies RFS denied by Dr. Singh CPE" and that Dr. Khoo told Fairfield that "it may take additional 2 weeks for approval from Dr. Singh" for a needle biopsy of the neck mass. (*Id*. at 19). This demonstrates that Dr. I. Singh was on notice of the mass on Fairfield's neck. Moreover, Dr. I. Singh reviewed and signed grievance no. CCWF-HC-17034534. (*Id*. at 18). And this grievance was exhausted at the headquarters' (third level) of review. (*Id*. at 16). "Ninth Circuit case law holds that when a prisoner is grieving an on-going medical issue, a decision at the third level of appeal serves to exhaust claims regarding that medical issue,

1  including claims against individuals who only acted as an administrative appellate

2  reviewer." *Franklin v. Foulk*, No 2:14-cv-00057 KJM DB, 2017 U.S. Dist. LEXIS 29106, at

3  *12 (E.D. Cal. Mar. 1, 2017) (collecting cases), *adopted* 2017 U.S. Dist. LEXIS 40759 (E.D.

4  Cal. Mar. 21, 2017).

5  Further, "when prison officials address the merits of a prisoner's grievance instead of

6  enforcing a procedural bar, the state's interests in administrative exhaustion have been served."

7  *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016). This is so because "[p]rison officials have

8  had the opportunity to address the grievance and correct their own errors and an administrative

9  record has been developed." *Id*. Here, prison officials addressed the merits of Fairfield's claim

10 at the third level of review. (Doc. No. 52-4 at 16). This also rendered his claims exhausted.

11 Accordingly, the Court finds that Fairfield's claims against Dr. I. Singh regarding

12 delayed testing and treatment of the mass on his neck should be allowed to proceed. However,

13 Fairfield has failed to present evidence that he exhausted his claim of radiation exposure against

14 Dr. I. Singh, and therefore that claim should be dismissed.

### c. No Claims Exhausted Against Dentist S. Singh

16 In his FAC, Fairfield claims that Dentist S. Singh acted with deliberate indifference to

17 his medical needs when he stated that he would remove all of Plaintiff's teeth before the start of

18 radiation, when he stated he would grind down all of Plaintiff's teeth to prevent tongue ulcers

19 from touching his teeth, and when he disregarded Plaintiff's complaints about mint-flavored

20 toothpaste. (Doc. No. 13 at 20-22). Defendants argue that Fairfield did not exhaust his

21 administrative remedies against Dentist S. Singh. (Doc. No. 52-3 at 12).

22 The undersigned agrees with Defendants. Fairfield exhausted two appeals to the third

23 level of review regarding toothpaste, CCWF HC 18000985 and CCWF HC 19000278. The first

24 appeal, CCWF HC 18000985, submitted on September 6, 2018, did not name Dentist S. Singh

25 as the individual who refused to provide the non-mint flavored toothpaste to Plaintiff. (Doc.

26 No. 58 at 220-22). Neither did Plaintiff complain that Dentist S. Singh suggested removing or

27 grinding down his teeth. (*Id*.). Because Fairfield failed to name Dentist S. Singh in this appeal,

28 as required by statute, Dentist S. Singh was not put on notice of Plaintiff's claims. *See* Cal.

Code. Regs. tit. 15, § 3084.2(a)(3) ("The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue."); *Bulkin v. Ochoa*, No. 1:13-cv-00388 DAD DLB PC, 2016 U.S. Dist. LEXIS 23374, at *17 (E.D. Cal. 2016) (dismissing plaintiff's argument that defendants were put on "constructive notice" of claim and finding that plaintiff must name or adequately describe defendants in order to put them on notice of suit). Accordingly, this appeal did not exhaust Fairfield's administrative remedies as to his claims against Dentist S. Singh.

The second appeal, CCWF HC 19000278, was submitted on April 24, 2019 and denied at the final level of review on September 24, 2019—over four months <u>after</u> Fairfield filed the instant lawsuit. (Doc. No. 52-4 at 72-73, 74-77). Thus, this appeal cannot serve to exhaust Fairfield's claims because a plaintiff must exhaust his claims *prior* to the filing of a federal lawsuit. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (holding that dismissal of the federal suit or claims is required where the plaintiff fails to exhaust his administrative remedies prior to filing suit). Moreover, Fairfield failed to name Dentist S. Singh in this complaint, as required by statute. (Doc. No. 52-4 at 74-77). Although this appeal concerned toothpaste, it did not complain that Dentist S. Singh's failed to prescribe the desired toothpaste, nor did the appeal contain any complaints concerning Dentist S. Singh's statements regarding the removal or grinding down of Plaintiff's teeth. Accordingly, this appeal did not serve to exhaust Fairfield's claims against Dentist S. Singh.

And, although Fairfield presents proof that he complained about Dentist S. Singh through other avenues, those complaints did not serve to administratively exhaust his claims. For example, in an inmate request for interview form submitted on August 19, 2018, Fairfield stated that Dentist S. Singh told him he could grind Fairfield's teeth down to alleviate the pain caused by the mouth sores. (Doc. No. 58 at 200-201). An inmate request for interview form does not serve to exhaust a prisoner's grievance administrative remedies. Rather, an inmate must file the proper CDCR Form 602 and appeal this to the highest level of review. *See* Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.8(b). In a reasonable accommodation request form, Fairfield complained that S. Singh retaliated against him by canceling his toothpaste order.

16

(Doc. No. 59 at 62-63).  However, this request form did not serve to exhaust Fairfield's claims because it was not submitted on a CDCR Form 602 and exhausted to the highest level of review. Therefore, the undersigned finds based upon the record that Fairfield did not exhaust his claims against Dentist S. Singh and recommends Dentist S. Singh should be dismissed from this case.

Accordingly, it is **RECOMMENDED**:

1. Defendants Motion for Summary Judgment (Doc. No. 52) be **GRANTED in part and DENIED in part**.
2. Plaintiff be given leave to proceed with his Eighth Amendment deliberate indifference claims related to his neck mass against Defendants Dr. Khoo and Dr. I. Singh.
3. All other unrelated claims against Dr. Khoo and Dr. I. Singh be dismissed.
4. Defendant Dentist S. Singh be dismissed from this case.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated: \_\_\_\_July 26, 2021\_\_\_\_

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

17