1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

MELISSA FAIRFIELD,

12

Plaintiff,

13

v.

14

15

ALBERT KHOO and IKWINDER SINGH,

16

Defendants.

17

18

19

Case No.  1:19-cv-00632-ADA-HBK (PC)

FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FOURTEEN-DAY OBJECTION PERIOD

(Doc. No. 102)

20

Pending before the Court is Defendants' Albert Khoo and Ikwinder Singh's motion for

21

summary judgment filed October 7, 2022.  (Doc. No. 102).  Plaintiff elected not to file any

22

opposition despite being granted a sixty-day extension of time.  (Doc. No. 104).  For the reasons

23

discussed below, the undersigned recommends the district court grant Defendants' motion for

24

summary judgment because there is no genuine dispute of material facts as to whether Defendants

25

acted with deliberate indifference to Plaintiff's serious medical condition.

26

## I.     BACKGROUND

27

### A.  Procedural History

28

Plaintiff Melissa Fairfield is a state prisoner proceeding pro se and *in forma pauperis* in

his[1] civil rights action in his First Amended Complaint under 42 U.S.C. § 1983 against Defendants Albert Khoo and Ikwinder Singh.  (Doc. No. 13).  The previous magistrate judge screened Plaintiff's First Amended Complaint and found it stated cognizable claims only against Defendants Khoo, I. Singh (a physician), and Singh (a dentist).  (Doc. No. 14 at 2).  Plaintiff agree to proceed on his First Amended Complaint as screened.  (Doc. No. 15).  On December 4, 2020, Defendants filed an exhaustion-based motion for summary judgment (Doc. No. 52) which the previously assigned district judge granted in part and denied in part, permitting Plaintiff to proceed only on his Eighth Amendment deliberate medical indifference claim against Defendants Khoo and I. Singh as to their treatment of Plaintiff's neck mass.  (Doc. Nos. 75, 81).  Defendants timely filed the instant merits-based motion for summary judgment.  (Doc. No. 102, "MSJ").

**B.  Defendants' MSJ**

Supporting their MSJ, Defendants submit: (1) a memorandum of points and authorities (Doc. No. 102-1); (2) a statement of undisputed material facts (Doc No. 102-2); (3) the declaration of A. Ola, M.D., (Doc. No. 102-3); (4) the declaration of Defendant Khoo (Doc. No. 102-4); (4) the declaration of Defendant I. Singh (Doc. No. 102-5); (5) the declaration of attorney Janet N. Chen, counsel of record for Defendants (Doc. No. 102-6); and (6) Plaintiff's deposition and pertinent medical records.  (*Id*. at 4-118).

**C.  Plaintiff's Opposition to Defendants' MSJ**

Plaintiff has not filed any opposition to Defendant's MSJ.  *See* docket.  Defendant served the MSJ on Plaintiff by First-Class Mail.  (Doc. No. 102-7 at 2).  The deadline for Plaintiff to file any opposition has long expired.  L.R. 230(l).

## II.  APPLICABLE LAW

**A.  Summary Judgment Standard**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate

---

[1] Plaintiff is a transgender male who prefers the use of male pronouns. (Doc. No. 13 at 32).

1   when there is "no genuine dispute as to any material fact and the movant is entitled to judgment

2   as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate

3   time for discovery and upon motion, against a party who fails to make a showing sufficient to

4   establish the existence of an element essential to that party's case, and on which that party will

5   bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

6   moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of

7   material fact. *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence

8   for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might

9   affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

10   U.S. 242, 248 (1986).

11          If the moving party meets its initial burden, the burden then shifts to the opposing party

12   to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ.

13   P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that

14   there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.  The

15   party is required to tender evidence of specific facts in the form of affidavits, and/or admissible

16   discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P.

17   56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a

18   material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be

19   shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

20   *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.

21   1987).  However, "failure of proof concerning an essential element of the nonmoving party's

22   case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

23          The court must apply standards consistent with Rule 56 to determine whether the

24   moving party demonstrated there is no genuine issue of material fact and showed judgment to be

25   appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

26   "[A] court ruling on a motion for summary judgment may not engage in credibility

27   determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.

28   2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the

1 nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving

2 party.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  A mere scintilla

3 of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly

4 supported summary judgment motion.  *Anderson*, 477 U.S. at 252.  However, where "opposing

5 parties tell two different stories, one of which is blatantly contradicted by the record" courts

6 "should not adopt that version of the facts for purposes of ruling on a motion for summary

7 judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

8          The Ninth Circuit has "held consistently that courts should construe liberally motion

9 papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules

10 strictly."  *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611

11 F.3d 1144, 1150 (9th Cir. 2010)).  While prisoners are relieved from strict compliance, they still

12 must "identify or submit some competent evidence" to support their claims.  *Soto*, 882 F.3d at

13 872.  Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment

14 if based on personal knowledge and specific facts admissible in evidence.  *Lopez v. Smith*, 203

15 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory allegations

16 unsupported by specific facts, will not be sufficient to avoid summary judgment.  *Arpin v. Santa*

17 *Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And, where a plaintiff

18 fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to

19 have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

20          The undersigned has carefully reviewed and considered all arguments, points and

21 authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

22 objections, and other papers filed by the parties.  The omission to an argument, document, paper,

23 or objection is not to be construed that the undersigned did not consider the argument, document,

24 paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

25 deemed admissible, material, and appropriate for purposes of issuing these Findings and

26 Recommendations.

27          **B.  Eighth Amendment Medical Deliberate Indifference**

28          The Constitution indisputably requires prison officials to provide inmates with reasonably

4

adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To hold an official liable for violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective prong and subjective prong. First, the inmate must suffer from a serious medical need (the objective prong); and second the official must be deliberately indifferent to the inmate's serious medical need (the subjective prong). *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). A medical need is "serious" if the failure to treat "could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). The "second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. (internal citations omitted). This standard requires that the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

Deliberate indifference is a higher standard than medical negligence or malpractice, and a difference of opinion between medical professionals—or between a physician and the prisoner— generally does not amount to deliberate indifference. *See generally Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (A mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference."). To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*, 90 F.3d at 332.

Neither will an "inadvertent failure to provide medical care" sustain a claim. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Misdiagnosis alone is not a basis for a claim, *see Wilhelm*, 680 F.3d at 1123, and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference," *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Instead, a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

## III.  ANALYSIS

### A.  Allegations in Plaintiff's Operative Complaint

The following factual allegations regarding Defendants' treatment of Plaintiff's neck mass are set forth in the operative complaint. On or about March 13, 2017, Dr. Showalter, who is not named as a defendant, diagnosed a "mass" in Plaintiff's face/neck area as a "slow-growing cyst" or lipoma. (Doc. No. 13 at 3, 5). Showalter prescribed antibiotics and told Fairfield if the mass does not get "better" he should inform his "PCP" to obtain a "possible" referral to an "ENT" and a "CT biopsy." (*Id.* at 3).

On May 9, 2017, Dr. Khoo examined Fairfield. (*Id.* at 2, 5). Dr. Khoo reviewed Dr. Showalter's notes and despite Fairfield's complaints of increased pain "downgraded [any] need for medical intervention" and confirmed the diagnosis of the mass "as a slow-growing cyst." (*Id.* at 5). Fairfield alleges Dr. Khoo failed to address "additional impairments" of the mass "as serious" and only scheduled him for a 90-day follow-up appointment. (*Id.*). When Fairfield saw a physician assistant on June 13, 2017, there were no medical notes from Dr. Khoo in his chart regarding the mass. (*Id.*). Fairfield claims that Dr. Khoo unnecessarily caused him to be in prolonged pain and caused him substantial harm when he dismissed the seriousness of his complaints about the mass and delayed sending him for a CT biopsy to determine whether the mass was cancer. (*Id.*). Specifically, Fairfield claims that Dr. Khoo "delay[ed] the immediate care of an aggressive lymphoma and not referring Plaintiff to an oncologist for treatment," caused him unnecessary pain and suffering. (*Id.* at 10).

////

6

Chief Physician and Surgeon Dr. Singh was Dr. Khoo's supervisor who approved or disapproved referrals submitted by Dr. Khoo.  (*Id.* at 18).  On May 30, 2017, Dr. Singh denied a referral to surgically remove the lipoma and did not order any additional tests to rule out malignancy of the mass.  (*Id.*).  Fairfield attributes liability to Dr. Singh because he "failed to inquire into essential facts needed to address the plaintiff [sic] complaints and ease the pain the plaintiff suffered."  (*Id.* at 18).  Additionally, Fairfield claims Dr. Singh wrongfully allowed him to pass through an imaging scanner ignoring the "manufacturer's warnings about being exposed to a high level of radiation" causing him to be exposed unnecessarily to radiation due to a port catheter in his chest.  (*Id.*).

### B. Defendant's Proposed Expert Testimony

Defendants refer to Dr. Ola's opinion testimony as "expert" testimony and seek to qualify him as an expert based on his education, background, training, knowledge, and substantial experience, coupled with his review of Plaintiff's medical records.[2]  (Doc. No. 102-1 at 2).[3]  Fed. R. Evid. 702 requires that expert testimony be both "reliable and relevant" whether based on scientific, technical, or other specialized knowledge."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

Dr. Ola, M.D., received his medical license from the Medical Board of California in 2011. (Doc. No. 102-3 at 2 ¶ 2).  He has experience as Chief Physician and Surgeon at Pleasant Valley State Prison and as Chief Physician and Surgeon at the California Correctional Health Care Services (CCHCS) Telemedicine Headquarters in Elk Grove.  (*Id.* at 1 ¶ 1).  He has been Chief Medical Executive at California Central Women's Facility (CCWF) in Chowchilla, California

---

[2]  Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify if the form of an opinion or otherwise if:
>     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>     (b) the testimony is based upon sufficient facts or data;
>     (c) the testimony is the product of reliable principles and methods; and
>     (d) the witness has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702.

[3] The undersigned refers to the page numbers indicated in the CM/ECF headers, rather than the bates stamp numbers referred to by Defendants.

1  since May 9, 2022.  (*Id.*).  In formulating his opinions, Dr. Ola relied upon his education, training,

2  knowledge, and professional experience as a licensed physician and manager of prison healthcare

3  systems, and a comprehensive review of Plaintiff's medical records from 2017,[4] as well as

4  Plaintiff's allegations against Defendants.  (*Id.* at 2, ¶¶ 4-5).

5        The Court accepts Dr. Ola's opinion as expert testimony under Federal Rules of Evidence

6  702 as to the medical care rendered by Defendants to Plaintiff, to the extent relevant.

7        **C.  Plaintiff's Failure to Oppose the Motion**

8        Plaintiff did not file an opposition to Defendant's MSJ, (*see* docket), nor did Plaintiff

9  submit a separate statement of undisputed facts as required by Local Rule 260(a).  Where a party

10  fails to oppose a motion for summary judgment, "Rule 56 is clear that although a court *may* deem

11  facts admitted in the exercise of its discretion, it need not do so."  *Warkentin v. Federated Life*

12  *Ins. Co.*, 594 F. App'x 900, 902–03 (9th Cir. 2014) (alteration in original); *see* Fed. R. Civ. P. 56

13  advisory committee's note to 2010 amendment ("[T]he court may choose not to consider [a] fact

14  as undisputed, particularly if the court knows of record materials that show grounds for genuine

15  dispute").  A court, however, is not authorized to automatically grant summary judgment to a

16  defendant solely because a plaintiff fails to oppose the motion.  *Cristobal v. Siegel*, 26 F.3d 1488,

17  1494–95 & n.4 (9th Cir. 1994); *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).

18        Where, as here, a party does not challenge the facts asserted by the moving party, the non-

19  moving party may be deemed to have admitted the validity of those facts.  *See* Fed. R. Civ. P.

20  56(e)(2).  Further, Local Rule 230(l) provides that the "[f]ailure of the responding party to file an

21  opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the

22  granting of the motion and may result in the imposition of sanctions."  Thus, the Court may grant

23  Defendant's unopposed motion for summary judgment if the supporting papers are themselves

24  sufficient to warrant granting the motion and do not on their face reveal a genuine issue of material

25  fact.  *See Gill Indus.*, 983 F.2d at 950.

26        ////

27

---

28  [4] Dr. Ola's declaration refers to an Exhibit A containing the medical records he reviewed, but there is no Exhibit A attached to his declaration.

**D. Undisputed Material Facts**

Defendants provide a statement of undisputed material facts.  (Doc. No. 102-2).  Each listed fact cites to the operative supporting document and is gleaned from sworn declarations, Plaintiff's medical records, deposition testimony, and the First Amended Complaint.  (*See* Doc. No. 102-2 at 1-6).  Having reviewed the record, the undersigned finds the following facts to be material and undisputed, unless otherwise noted.

- Plaintiff Fairfield is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) who at all times relevant to this case was housed at Central California Women's Facility (CCWF).  (*Id*. at 1 ¶ 1.)

- Plaintiff does not have any medical training.  (*Id*. ¶ 2.)

- Defendant Dr. A. Khoo is and at all times relevant, was, a primary care provider at CCWF.  (*Id*. at 2 ¶ 3.)

- Defendant Dr. I. Singh is currently Chief Medical Executive at Kern Valley State Prison.  At all times relevant to this action, Dr. Singh was the Chief Physician and Surgeon at CCWF.  (*Id*. ¶ 4.)

- On May 9, 2017, Plaintiff was seen by Dr. Khoo.  Dr. Khoo reviewed Plaintiff's chart prior to seeing him.  The chart indicated that Plaintiff had a prior office visit on April 13, 2017, during which he was seen by Nurse Practitioner Attinello to review lab work and request removal of a push and pull chrono.  There was no discussion regarding a mass or lump in his neck during the April 13 visit.  NP Attinello noted that Plaintiff's neck was "supple and mobile. Thyroid not enlarged. No thyroid nodules or tenderness." (*Id*. ¶ 5.)

- The chart further indicates that prior to the April 13 visit, Plaintiff was seen by Dr. Showalter on March 13, 2017, for chief complaint of "second opinion re [gynecological] issue" raised in a 602-appeal log no. CCWF HC 17034156.  Dr. Showalter noted that Plaintiff noticed a lump on the right side of his neck about one week prior.  Plaintiff stated the lump was not tender and that he did not have a sore throat, cough, or scalp lesion.  Plaintiff stated he did have some type of cold

9

1   with ear stopping up afterward.  Dr. Showalter prescribed an antibiotic for 10 days

2   and noted "if mass doesn't decrease by 1 month, plan ENT referral and/or CT scan

3   and probable biopsy."  (*Id*. ¶ 6.)

4   •   On May 9, 2017, during Dr. Khoo's visit with Plaintiff, Plaintiff's chief complaint

5   was that he needed a Hydrochlotroiazide refill and that he had a large knot on the

6   right side of his neck.  Plaintiff stated the previous provider saw a neck mass on

7   the right side of his neck for which he was given an antibiotic.  He stated that it

8   was not going down and instead increased in size with pain.  Plaintiff wanted to

9   get the mass removed if possible.  He denied weight loss, appetite loss, headache,

10   dizziness, blurry vision, chest pain, and palpitation.  Dr. Khoo conducted a

11   physical examination of Plaintiff's neck and noted mild redness on the skin in the

12   area of the mass which was located on the right side of his neck.  Dr. Khoo noted

13   there was no increase in the jugular vein distension.  Dr. Khoo noted the single

14   mass measured 2 cm x 4 cm in size and was non-mobile with swallowing.  Dr.

15   Khoo concluded based on his examination that the mass was likely a lipoma,

16   which is a benign tumor of fat.  Specifically, Dr. Khoo's determination was based

17   on: the location of the mass in the neck area, because lipomas are quite common in

18   the neck area; lack of other symptoms (e.g., the mass being hard and non-mobile,

19   persistent tiredness, unexpected weight loss, or loss of appetite) that would suggest

20   the mass was not a lipoma.  Based on his physical findings during the examination

21   and his medical training, Dr. Khoo did not believe the mass was indicative of

22   cancer at this time.  (Doc. No. 104-4 at 3, ¶ 9).  Nonetheless, Dr. Khoo noted that

23   he would discuss with the Utilization Management Nurse whether Plaintiff met

24   InterQual criteria for removal of the mass, as Plaintiff had symptoms, i.e., the mass

25   was enlarging in size, and it was painful to swallow.  (Doc. No. 102-2 at 2-3 ¶ 7.)

26   •   On or about May 12, 2017, Dr. Khoo submitted a Physician Request for Services

27   (RFS) to have the enlarging neck mass surgically excised.  Dr. Khoo submitted the

28   request as a routine request and noted the medical necessity as follows: this was a

46-year-old with a lateral neck mass for months not improving after antibiotics, but increased in size and now affecting painful swallowing.  Dr. Khoo also noted that Plaintiff wanted the mass removed.  (*Id*. at 3 ¶ 8.)

- Dr. Singh reviewed the RFS submitted by Dr. Khoo for Plaintiff on or around May 12, 2017.  The request was submitted on a "routine" basis, meaning the service was to be provided in 90 days.  Dr. Singh denied the request at that time because he believed additional information was necessary before excision, including whether a CT scan of the neck had been done, whether the Plaintiff had been seen by an Ear Nose and Throat or Head and Neck Surgeon, the size of the mass, whether it was tender or hard, and whether any labs (CBC, ESR, LDR) had been done.  (*Id*. ¶ 9.)

- On a follow-up visit on June 21, 2017, following the denial of the RFS, Physician's Assistant Phanh reviewed the reasons for denial and requested an urgent CT scan of the neck.  The CT scan report was abnormal, and Plaintiff's further appointments were expedited, and Plaintiff was seen by a surgeon the following month.  The surgeon advised CT guided needle biopsy.  (*Id*. ¶ 10.)

- Dr. Khoo saw Fairfield on July 5, 2017, to discuss the results of a CT scan that was taken on or around June 29, 2017.  Dr. Khoo reviewed Plaintiff's CBC, CMP, ESR, and thyroid function tests.  Dr. Khoo discussed the radiologist's findings and recommendations to perform an excisional biopsy and PET/CT scan.  Dr. Khoo discussed the imaging results with Plaintiff, who agreed to remove the mass for a biopsy to make sure that it was not lymphoma.  (*Id*. ¶ 11.)

- On July 19, 2017, Plaintiff was seen by the surgeon for the excision but instead was recommended to get a CT guided biopsy of lymph node and possible PET scan.  (*Id*. ¶ 12.)

- Dr. Khoo saw Plaintiff again on August 1, 2017, for a follow-up after Fairfield's visit with the surgeon on July 19, 2017.  Dr. Khoo discussed the surgeon's findings and recommendations with Plaintiff, who agreed to do the guided biopsy

11

CT and possible PET scan.  Dr. Khoo submitted a new RFS for a biopsy and referral to surgery.  (*Id*. ¶ 13.)

- Dr. Khoo saw Plaintiff again on August 28, 2017, for chief complaint of, among other things, hearing loss to his right ear and PET scan for mass in his neck. Plaintiff stated he had hearing loss especially on the right side and that it was getting worse.  He also stated that he wanted to get a PET scan as the surgeon recommended it.  He also stated that he was scheduled for his biopsy of the neck mass the next day.  Regarding his hearing, Dr. Khoo conducted a "whisper test" by rubbing his fingers together to test his hearing in his right ear.  Dr. Khoo noted "whisper test positive," discussed with the Plaintiff, and submitted an RFS for audiology.  (*Id*. ¶ 14.)

- Dr. Khoo saw Plaintiff again on August 30, 2017, when Plaintiff returned from the hospital to check his biopsy wound.  The wound was checked and explored and it was clean but slightly red, no blood, no discharge, slightly tender, but otherwise fine.  Dr. Khoo cleaned the wound with 70% alcohol and applied tegaderm and advised the Plaintiff to keep it clean and dry.  Dr. Khoo noted "will follow up when biopsy result is available.  (*Id*. at 4-5 ¶ 15.)

- Dr. Khoo saw Plaintiff again on September 6, 2017, to follow up on the biopsy of the neck mass.  The results of the biopsy report showed that Plaintiff had follicular lymphoma (or non-Hodgkin's lymphoma), a type of cancer.  Dr. Khoo referred Plaintiff to general surgery, and on September 13, 2017, referred Plaintiff to an oncologist.  (*Id*. at 5 ¶ 16.)

- Dr. Khoo went on to treat Plaintiff several more times including on the following dates: September 13, 2017; September 26, 2017; November 6, 2017; November 21, 2017; December 8, 2017; December 28, 2017; January 8, 2018; January 16, 2018; February 5, 2018; February 28, 2018; March 7, 2018; March 29, 2018. Fairfield refused to be seen by Dr. Khoo on May 11, 2018, and again on February 6, 2019.  Dr. Khoo did not see Plaintiff for any face-to-face visits from about

March 29, 2018, to February 15, 2019, but during that time, Dr. Khoo occasionally discussed his treatment with other providers during morning huddles, reviewed his requests and ordered/renewed treatment/medications.  (*Id*. ¶ 17).

- There was no delay in diagnosis or treatment related to the denial of Dr. Khoo's initial RFS.  A PET CT scan completed in October 2017, as compared to the initial Neck CT scan done in June 2017, showed that the disease was still localized on the right side of the neck and there was no systemic spread.  The oncologist diagnosed Plaintiff with stage 1/2 of Non Hodgkin's Lymphoma, for which the Plaintiff had refused chemotherapy and chose treatment with only rituximab and radiation instead.  As of March 2020, Plaintiff's cancer was in remission according to the PET CT scan report.  At that time, he required maintenance treatment with rituximab every 4 months.  (*Id*. ¶ 18.)

- Neither Dr. Khoo nor Dr. Singh caused a delay in diagnosing Plaintiff's cancer. The surgeon needed a CT scan prior to removal of the mass which ended up needing a CT guided biopsy.  Plaintiff's cancer diagnosis was confirmed within about two months after the initial CT scan.  (*Id*. ¶ 19.)

- Dr. Khoo's decision to request the suspected lipoma be removed was reasonable, as the surgeon performing the excision would likely have required additional testing before excision.  Dr. Singh's decision to deny Dr. Khoo's request pending additional testing was reasonable.  (*Id*. at 6 ¶ 20.)

- Nothing in the medical record suggests that Plaintiff suffered as a result of either the actions or Drs. Khoo or Singh. (*Id*. ¶ 21.)

**D.  The Undisputed Facts Show Neither Defendant Acted with Deliberate Indifference to Plaintiff's Serious Medical Condition**

The undersigned first must consider whether Defendants, as the moving parties, have met their initial burden of showing *prima facie* entitlement to summary judgment on the issue of Plaintiff's medical deliberate indifference claim.  *Celotex Corp.*, 477 U.S at 323.  The *prima facie* elements of medical deliberate indifference are (1) a "serious medical need[,] [where] failure to

1  treat a prisoner's condition could result in further significant injury or the unnecessary and

2  wanton infliction of pain" and (2) the defendant's "response to the need was deliberately

3  indifferent." *Wilhelm*, 680 F.3d at 1122 (internal quotation marks and citation omitted).  The

4  second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's

5  pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096

6  (internal citations omitted).

7        **1.  Serious Medical Need**

8        Here, it is undisputed that Plaintiff suffered from a serious medical condition, i.e. non-

9  Hodgkin's lymphoma, a form of cancer.  Even if the Court presumes for these findings and

10  recommendation that mass on the Fairfield's neck constituted a serious medical condition due to

11  Plaintiff stated increased pain when swallowing, the undisputed facts also demonstrate that

12  Defendant Khoo was not aware that Plaintiff's neck mass was cancerous until September 6, 2017,

13  after he received the results of the neck mass biopsy.  (Doc. No. 102-2 at 5 ¶ 16).  There is no

14  indication Dr. Singh knew earlier than September 6, 2017 that Plaintiff's neck mass was

15  cancerous.

16        **2.  Deliberate Indifference**

17        Plaintiff fails to show a genuine dispute of material fact as to the second prong of medical

18  deliberate indifference—failure to respond to a serious medical condition.  *Jett*, 439 F.3d at 1096.

19  The record is undisputed that Defendant Khoo first examined Plaintiff on May 9, 2017

20  concerning the neck mass, performed a physical examination, reviewed Plaintiff's medical file,

21  evaluated Plaintiff's neck mass, consulted with a nurse regarding Plaintiff's eligibility for

22  removal of the mass, and three days later submitted a Physician's Request for Service ("RFS")

23  ordering the removal of the mass as a routine procedure.  (Doc. No. 102-2 at 2-3 ¶ 7).  At the

24  time, Defendant Khoo did not believe the mass was malignant based on the location of the mass

25  in the neck area, where lipomas are quite common, and the lack of other symptoms (e.g., the mass

26  being hard and non-mobile unless swallowing, persistent tiredness, unexpected weight loss, loss

27  of appetite) that would suggest the mass was not a lipoma.  (*Id*).

28        In his First Amended Complaint, Plaintiff contends his "fast-developing symptoms were

1   not taken seriously" by Defendant Khoo, and "the pain and suffering the Plaintiff endured while

2   awaiting [sic] for a medical appointment was agony, witnessed by housing staff Mr. Coakley and

3   Inmate Downs."  (Doc. No. 13 at 5).  Plaintiff asserts that "by . . . dismissing the seriousness of

4   the Plaintiff's Complaint, Dr. Khoo intentionally created unnecessary prolonged pain and

5   substantial harm."  (*Id*.).  Plaintiff contrasts Defendant Khoo's actions with those of PA Phanh,

6   who apparently disagreed with Defendant Khoo's preliminary assessment of the mass as a lipoma

7   and ordered an urgent CT scan to rule out malignancy.  (*Id*. at 6).

8            A mere difference of opinion, however, does not constitute deliberate indifference to a

9   serious medical condition.  *See Toguchi*, 391 F.3d at 1051.  Thus, the fact that Dr. Khoo and PA

10  Phanh arrived at different conclusions as to the likely explanation of the mass does not establish

11  that Khoo was deliberately indifferent.  Further, Phanh evaluated Plaintiff on June 21, 2017,

12  roughly a month after Defendant Khoo, and presumably the symptoms presented were different

13  than on the earlier date.  There are no facts or competent medical opinions in the record to

14  indicate that the course of treatment Defendant Khoo selected after examining Plaintiff on May 9,

15  2107 "was medically unacceptable under the circumstances," and was chosen "in conscious

16  disregard of an excessive risk to [the prisoner's] health."  *Jackson*, 90 F.3d at 332.  There are no

17  facts in the record to suggest that Defendant Khoo knew or even should have known that the mass

18  was malignant.  The only medical expert to opine on the matter, Dr. Ola, asserts that Defendant

19  Khoo's chosen course of treatment was reasonable based on the symptoms presented.  (*See* Doc.

20  No. 102-3 at 3-4 ¶¶ 13-14).

21           Nor is it relevant whether Defendant Khoo should have known that the neck mass was

22  malignant.  "'If a [prison official] should have been aware of the risk, but was not, then the

23  [official] has not violated the Eighth Amendment, no matter how severe the risk.'"  *Toguchi*, 391

24  F.3d at 1057 (citations omitted).  This "subjective approach" focuses only "on what a defendant's

25  mental attitude actually was."  *Farmer,* 511 U.S. at 839.  "Mere negligence in diagnosing or

26  treating a medical condition, without more, does not violate a prisoner's Eighth Amendment

27  rights."  *Id.* (citations omitted).  The question in a deliberate indifference analysis is whether

28  Khoo *knew* that the mass was cancerous and nevertheless consciously chose not to provide

1   Plaintiff with necessary medical care.  The record is devoid of facts showing that Defendant Khoo

2   knew Plaintiff's neck mass was cancerous and nevertheless ignored it.

3        As to Defendant Singh, the record reflects that he denied the Physician's RFS submitted

4   by Dr. Khoo because he believed that additional information was needed before excision,

5   including whether a CT scan of the neck had been done, whether the Plaintiff had been seen by an

6   Ear Nose and Throat or Head and Neck Surgeon, the size of the mass, whether it was tender or

7   hard, and whether any labs had been done.  (Doc. 102-2 at 3 ¶ 9).  Plaintiff contends that Dr.

8   Singh could have directly ordered such tests himself and implies that doing so would have

9   expedited Plaintiff's cancer diagnosis.  (Doc. No. 13 at 19).  While it is theoretically possible that

10   Dr. Singh could have scheduled Plaintiff's CT scan and other tests, there are no facts in the record

11   to indicate this would have the appropriate course of action for a Chief Physician and Surgeon, as

12   opposed to sending guidance to his staff.  More importantly, there is no indication that Defendant

13   Singh knew Plaintiff's neck mass was cancerous and nevertheless failed to order tests on an

14   urgent basis.  The only competent medical opinion in the record, from Dr. Ola, indicates that Dr.

15   Singh's course of action was appropriate and reasonable.  (Doc. No. 102-3 at 3-4, ¶¶ 13-15).

16        At most, accepting Plaintiff's version of the facts as true, Plaintiff presents a possible

17   medical negligence claim under the theory that Defendants should have taken steps to diagnose

18   Plaintiff with non-Hodgkin's lymphoma sooner than they did.  But medical negligence does not

19   amount to cruel and unusual punishment under the Eighth Amendment.  *See Broughton v. Cutter*

20   *Labs*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam) (medical malpractice or negligence does not

21   support a cause of action under the Eighth Amendment); *Garcia v. Katukota*, 362 F. App'x 622,

22   622 (9th Cir. 2010) (evidence of medical misdiagnosis and difference of medical opinion are

23   insufficient to show deliberate indifference).

24        The overwhelming record evidence shows that Defendants Khoo and Singh provided

25   appropriate medical care for Plaintiff's identified symptoms and he was seen by specialists

26   without undue delay and received competent care.  Taken together, the record refutes Plaintiff's

27   claim of medical deliberate indifference.  Defendants are accordingly entitled to summary

28   judgment on this basis.

1  Construing the evidence in the light most favorable to Plaintiff, the undersigned finds
2  there is no triable issue as to whether Defendants Dr. Khoo and Dr. Singh acted with deliberate
3  indifference to Plaintiff's serious medical condition.  The record demonstrates Plaintiff received
4  adequate medical care for his neck mass, and once diagnosed as Non-Hodgkin's Lymphoma,
5  received attentive care in response to his cancer diagnosis.

6  Accordingly, it is **RECOMMENDED**:

7  The district court GRANT Defendants Khoo and I. Singh's motion for summary judgment
8  (Doc. No. 102), enter judgment in Defendants' favor, and close this case.

9  **NOTICE TO PARTIES**

10  These findings and recommendations will be submitted to the United States District Judge
11  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)
12  days after being served with these findings and recommendations, a party may file written
13  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's
14  Findings and Recommendations."  Parties are advised that failure to file objections within the
15  specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,
16  838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

17

18  Dated:   August 21, 2023

19  HELENA M. BARCH-KUCHTA
20  UNITED STATES MAGISTRATE JUDGE
21
22
23
24
25
26
27
28